[Cite as *State v. Montalvo*, 2020-Ohio-3418.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NOS. 2019-A-0075**<br>**2019-A-0076** |
| REYNALDO MONTALVO, | : | |
| Defendant-Appellant. | : | |

Criminal Appeals from the Ashtabula Municipal Court.
Case Nos. 2018 CRB 01351 A & B.

Judgment: Affirmed in part and reversed in part; remanded.

*Michael Franklin*, Ashtabula City Solicitor, and *Lori B. Lamer*, Assistant Ashtabula City Solicitor, Ashtabula Municipal Court, 110 West 44th Street, Ashtabula, OH 44004 (For Plaintiff-Appellee).

*Rebecca R. Grabski*, 206 South Meridian Street, Suite B, Ravenna, OH 44266 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Reynaldo Montalvo, appeals from the judgment entry of sentence issued in the Ashtabula Municipal Court on September 13, 2019. The judgment is affirmed in part and reversed in part.

**Procedural History**

{¶2} Two complaints were filed against appellant in the Ashtabula Municipal Court on August 27, 2018, charging him with one count of Obstructing Official Business,

a second-degree misdemeanor in violation of R.C. 2921.31(A), and one count of Aggravated Disorderly Conduct, a fourth-degree misdemeanor in violation of R.C. 2917.11(A)(1). Appellant was found guilty of both charges following a jury trial.

{¶3} Appellant was sentenced on September 13, 2019. The trial court imposed 60 days in jail and a $250.00 fine for Obstructing Official Business, with 30 days suspended. The trial court imposed 30 days in jail and a $150.00 fine for Aggravated Disorderly Conduct. The jail terms were run concurrent to each other, with credit for one day time served.

{¶4} Appellant was ordered to jail for 3 days forthwith, with the remaining 27 days of his non-suspended sentence to be served 90 days from the date of sentence. Those 27 days were further suspended on the conditions that appellant complete 24 hours of community service while wearing a shirt that reads, "I disrespect police," and commit no similar offenses for two years.

{¶5} On September 19, 2019, the trial court granted appellant a stay of execution of his sentence pending appeal.

### Assignments of Error

{¶6} Appellant raises the following two assignments of error:

[1.] The trial court committed reversible error in convicting Appellant-Defendant as it was against the manifest weight of the evidence presented during trial.

[2.] The trial court committed reversible error as the evidence was insufficient to sustain a conviction.

{¶7} Appellant contends neither of his convictions are supported by sufficient evidence and both are against the manifest weight of the evidence.

{¶8} "With respect to sufficiency of the evidence, '"sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to

2

the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990) and citing Crim.R. 29(A). "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process." *Id.* at 386-387, citing *State v. Robinson*, 162 Ohio St. 486 (1955) and *Tibbs v. Florida*, 457 U.S. 31, 45 (1982).

{¶9} "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id.* at 387 (emphasis sic), quoting *Black's*, *supra*, at 1594.

> 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'

*Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a '"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*, quoting *Tibbs*, *supra*, at 42.

**The Officers' Testimony**

{¶10} The only testimony at trial was given by the five law enforcement officers that were involved with the incident: Deputy Brian Sterrick, of the Ashtabula County Sheriff's Department; and Patrolman Jay Janek, Lieutenant Rodney Blaney, Patrolman

3

Cody Caruso, and Patrolman Logan Nickles, all of the City of Ashtabula Police Department.

{¶11} Deputy Sterrick was patrolling the city of Ashtabula searching for Antonio Brown, who was wanted on a felony warrant and said to be in possession of a firearm. Deputy Sterrick observed Brown and appellant at a Circle K, standing together behind a running vehicle at the gas pumps. The deputy pulled in and placed Brown in custody, but he had to wait for a transport car.

{¶12} Appellant began questioning Deputy Sterrick as to why Brown was being arrested. Appellant retrieved Brown's cell phone from his person, while Brown was handcuffed, and called Brown's family. Deputy Sterrick testified that appellant became a distraction to the performance of his duties.

{¶13} Patrolman Janek arrived on scene. While Patrolman Janek attempted to focus on Brown, appellant began to engage the officer in conversation about joining the police academy. Appellant did the same to Patrolman Caruso when he arrived on scene.

{¶14} Patrolman Janek testified that leaving a car running unattended at a gas pump is a violation of a city ordinance. He asked appellant and Brown who owned the vehicle, but neither of them responded. Appellant refused to provide identification or orally identify himself. Patrolman Janek reached in through an open window and shut off the vehicle, then he ran the license plate number through dispatch. Appellant protested both of these actions but still refused to identify himself or whether he owned the vehicle. Patrolman Caruso testified that appellant was becoming loud and aggressive.

4

{¶15} All three of these officers testified that appellant made a comment about having a loaded firearm in the vehicle and a concealed carry permit. Appellant refused to provide the permit when requested.

{¶16} After the vehicle came back registered to a female, Patrolman Janek opened the car door to look for a loaded firearm. Appellant began recording the officer on his cell phone and told him he "can't be in there." Appellant then stated his permit was in the visor and gave the officer permission to retrieve it. Patrolman Janek discovered the paper was merely a certificate for completion of a concealed carry class. Appellant again refused to identify himself.

{¶17} Thereafter, Lieutenant Blaney arrived on scene. He also testified that he heard appellant say he had a loaded firearm in the vehicle. Lieutenant Blaney left his police vehicle as appellant's behavior escalated. The officers searched the vehicle for a loaded firearm. They found a loaded magazine, but no firearm was located.

{¶18} Appellant again refused to identify himself and became more argumentative. The lieutenant advised appellant that if he refused again, he would be placed under arrest. Patrolman Caruso testified that because appellant stated he had a loaded firearm and a concealed carry permit, he was required to provide identification and the permit when requested. Appellant was ultimately arrested for obstructing official business.

{¶19} Appellant was placed in the back of Patrolman Caruso's police vehicle, where appellant proceeded to yell, scream, swear, and kick at the bars on the window. The officers were unable to identify appellant until some of his family members arrived on scene. Appellant refused to calm down after repeated requests and only responded with "f--k you."

5

{¶20} Because he refused to calm down, Patrolman Caruso transported appellant to the Ashtabula City Jail. Patrolman Nickles was called in to assist. Both officers testified appellant refused to cooperate, refused to identify himself, refused to answer general medical questions, and only responded with "f--k you." Appellant refused to allow the officers to fingerprint him and repeatedly stuck out his tongue while booking photos were taken. Patrolman Nickles testified that appellant was irate, uncooperative, combative, and referred to the officers as "pigs" and "f--k boys."

{¶21} Appellant refused to change into a jail uniform. Patrolman Nickles undressed appellant—not by force, as appellant was passively resisting. Appellant then refused to put on the jail uniform. While the officer escorted appellant, who was unclothed, to his jail cell, appellant deliberately bumped into the walls and used his feet to stop forward motion. Once in the cell, appellant "buzzed" dispatch, yelling and screaming.

{¶22} Patrolman Nickles testified the booking process normally takes 30 to 45 minutes. He attempted to complete the process with appellant for over an hour, and it was not finally completed until the following day. The officer testified that while they were attending to appellant, calls for service went unanswered due to his behavior.

**Obstructing Official Business**

{¶23} Appellant was initially arrested on a charge of Obstructing Official Business: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." R.C. 2921.31(A).

6

{¶24} "While Ohio courts have concluded that the mere refusal to answer questions does not constitute an 'act' necessary to support a conviction of obstructing official business, it is well-established that where an individual also takes affirmative actions to hamper or impede the police, such conduct may support a conviction of obstructing official business." *State v. Jackson*, 11th Dist. Lake No. 2008-L-147, 2009-Ohio-6226, ¶21, citing *State v. Justice*, 4th Dist. Pike No. 99CA631, 1999 WL 1125113, *5 (Nov. 16, 1999). "The making of an unsworn false oral statement to a public official with the purpose to mislead, hamper or impede the investigation of a crime is punishable conduct within the meaning of * * * R.C. 2921.31(A)." *State v. Lazzaro*, 76 Ohio St.3d 261 (1996), syllabus.

### Sufficiency of the Evidence

{¶25} Appellant contends there was no testimony of what "lawful duties" or "authorized act" the officers were neglecting as a result of his actions.

{¶26} The jury was instructed that "lawful duties" means "any act or acts required by law." It is undisputed that the officers were involved in the investigation and arrest of a suspect involved in an unrelated offense, who was assumed to be in possession of a firearm. This is without question a lawful duty and an authorized act of a law enforcement officer.

{¶27} Appellant's argument is not well taken.

### Manifest Weight of the Evidence

{¶28} Appellant argues his conviction is against the manifest weight of the evidence because the officers' testimony did not establish that appellant acted "with purpose" to hinder the police investigation.

7

{¶29} "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶30} The jury was additionally instructed that "it must be established in this case that at the time in question there was present in the mind of the defendant a specific intention to prevent, obstruct or delay the performance by an Ashtabula Police Officer of an act within his official capacity. * * * The purpose with which a person does an act or brings about a result is determined from the manner in which it is done, the means used and all the other facts and circumstances in evidence."

{¶31} The jury could reasonably infer from the officers' testimony, and find beyond a reasonable doubt, that appellant's specific intention was to engage in conduct—retrieving Brown's cell phone from his person, distracting officers with unnecessary conversation, and announcing there was a loaded firearm in the vehicle—that hampered or impeded the officers in performing their lawful duties. Appellant's argument is not well taken.

{¶32} Appellant further contends his conviction is against the manifest weight because the officers failed to communicate properly amongst themselves regarding appellant, which was what hindered the officers' ability to perform their lawful duties. This argument ignores the fact that, had appellant not inserted himself into the situation and protested the actions of the officers as they were taking Brown into custody, the officers would have had no reason to concern themselves with appellant. The testimony establishes appellant created any confusion surrounding himself by refusing to identify himself and announcing there was a loaded firearm in the vehicle.

8

{¶33} Appellant's conviction for Obstructing Official Business is supported by sufficient evidence and is not against the manifest weight of the evidence.

**Aggravated Disorderly Conduct**

{¶34} Appellant was also charged with Aggravated Disorderly Conduct. The statute provides, in pertinent part, that "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another by * * * [e]ngaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior[.]" R.C. 2917.11(A)(1).

{¶35} "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

<u>Sufficiency of the Evidence</u>

{¶36} Appellant contends his actions were not reckless, by definition, because he was merely exercising his First Amendment right to freedom of speech. This argument is inapposite to the crime of which he was convicted. There are portions of the disorderly conduct statute that prohibit certain speech and expression, to wit: (A)(2) and (A)(3). However, the subdivision under which appellant was charged—(A)(1)— "prohibits certain *behavior.*" *State v. Reeder*, 18 Ohio St.3d 25, 26 (1985) (emphasis added); *see also State v. Logue*, 7th Dist. Mahoning No. 97-BA-22, 2000 WL 246485, *4 (Feb. 25, 2000) ("this section of the Revised Code contains elements prohibiting behavior").

{¶37} Thus, while "mere words are insufficient to support a conviction of disorderly conduct" under (A)(1), "conduct showing 'a blatant disrespect for the law' has

9

been held to rise to the level of violent or turbulent behavior." *Akron v. Concannon*, 9th Dist. Summit No. 24512, 2009-Ohio-4162, ¶17, quoting *State v. Stewart*, 11th Dist. Trumbull No. 93-T-5000, 1994 WL 721733, *2 (Dec. 16, 1994).

{¶38} Appellant's freedom of speech argument is not well taken, as it is inapposite to the offense of which he was convicted.

<u>Manifest Weight of the Evidence</u>

{¶39} Appellant contends his conviction is against the manifest weight of the evidence because the officers' testimony was inconsistent and because all of his disorderly behavior took place after he was already in handcuffs and removed from the situation.

{¶40} Initially, it is not necessary that appellant's behavior take place prior to his arrest. He was arrested for obstructing official business, following which he engaged in behavior that precipitated the disorderly conduct charge.

{¶41} "The word, 'turbulent,' in the context of Ohio's disorderly conduct statute, refers to tumultuous behavior or unruly conduct characterized by violent disturbance or commotion." *Reeder*, *supra*, at 27. Courts have held that "vulgar language, when accompanied by aggressive behavior, can be sufficient for a disorderly conduct conviction based on 'turbulent behavior.'" *Middletown v. Carpenter*, 12th Dist. Butler No. CA2006-01-004, 2006-Ohio-3625, ¶17 (citation omitted); *accord State v. Jackson*, 2d Dist. Montgomery No. 17128, 1998 WL 801367, *2-4 (Nov. 20, 1998) (where, in addition to verbally berating the officer, the defendant grabbed the officer's shirt) and *State v. Rajeski*, 12th Dist. Warren No. CA2002-11-120, 2003-Ohio-2783, ¶2 (where, in addition to vulgar language directed to the officer, the defendant stormed out of an apartment complex towards the officer in an aggressive manner).

10

{¶42} The testimony of the officers outlined above establishes that appellant engaged in turbulent behavior when placed in the back of the police vehicle and after arriving at the police station. Any minor inconsistencies in the officers' testimony did not rise to the level of a manifest miscarriage of justice. This is not the exceptional case where the evidence weighs heavily against the conviction.

{¶43} Appellant's conviction for violating R.C. 2917.11(A)(1) is not against the manifest weight of the evidence.

### Aggravating Factor

{¶44} Finally, appellant contends there was insufficient evidence of an aggravating factor to elevate his offense.

{¶45} Disorderly Conduct is generally a minor misdemeanor offense, R.C. 2917.11(E)(2), and is aggravated to a misdemeanor of the fourth degree in certain circumstances. R.C. 2917.11(E)(3) provides, in pertinent part:

> Disorderly conduct is a misdemeanor of the fourth degree if any of the following applies:
>
> (a) The offender persists in disorderly conduct after reasonable warning or request to desist.
>
> * * *
>
> (c) The offense is committed in the presence of any law enforcement officer, firefighter, rescuer, medical person, emergency medical services person, or other authorized person who is engaged in the person's duties at the scene of a fire, accident, disaster, riot, or emergency of any kind.

{¶46} The complaint issued against appellant charged him as follows: "One REYNALDO MONTALVO, did recklessly cause inconvenience, annoyance or alarm to another by engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior. Said REYNALDO MONTALVO *did persist in disorderly conduct*

11

*in the presence of law enforcement officer.*" (Emphasis added.) This charge is a hybrid of a portion of the aggravating factors found in subsections (3)(a) and (3)(c), but charges neither of them completely. The complaint does, however, state the degree of the offense of which appellant was accused, to wit: fourth-degree misdemeanor.

{¶47} Immediately prior to trial, the state requested to amend the complaint by replacing the phrase "did persist in" with the word "committed." The prosecutor stated, "Based on my reading of the jury instructions in OJI and the Revised Code, the conduct does not have to persist in the presence of a law enforcement officer. The mere fact that it was committed in front of a law enforcement officer is what gives it the M4 designation."

{¶48} The trial court allowed the amendment. Thus, the allegation for trial was that appellant "committed disorderly conduct in the presence of law enforcement officer," which is not a complete statement of the aggravating factor found in (3)(c). To convict appellant of Aggravated Disorderly Conduct, the state had the burden to produce evidence sufficient for a jury to conclude, not only that the conduct was committed in the presence of a law enforcement officer, but that the officer was engaged in his or her "duties at the scene of a fire, accident, disaster, riot, or emergency of any kind."

{¶49} Not only was appellant not charged and prosecuted with this language, the jury was not instructed as to all of the additional elements it must find under (3)(c). The jury was instructed that it must find the disorderly conduct was committed "in the presence of a law enforcement officer." It was not instructed, however, that it must find the law enforcement officer was "engaged in the person's duties at the scene of a fire, accident, disaster, riot, or emergency of any kind," despite the fact that the OJI provides

12

for this instruction. The jury verdict form also does not state that this additional element was present, nor does it state the degree of the offense.

{¶50} "When the presence of one or more additional elements makes an offense one of more serious degree: * * * [a] guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged." R.C. 2945.75(A)(2). "Pursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, syllabus; *see also State v. Perry*, 11th Dist. Lake No. 2011-L-125, 2013-Ohio-5803, ¶7.

{¶51} While no argument is raised on appeal as to the jury instruction or verdict form, we conclude that the omission is plain error. The complaint did not completely state the aggravating factor, the prosecution did not acknowledge the complete set of facts it must prove when it amended the complaint prior to trial, and the jury was not properly instructed.

{¶52} Accordingly, we conclude under the facts of this case that due process requires appellant only be found guilty of the least degree of Disorderly Conduct, which is a minor misdemeanor.

{¶53} As stated above, appellant's conviction for the least degree of Disorderly Conduct is supported by sufficient evidence and is not against the manifest weight of the evidence. It was error, however, to convict appellant of Aggravated Disorderly Conduct.

13

## Disposition

{¶54} Appellant's first assignment of error is without merit. Appellant's second assignment of error has merit to the extent indicated.

{¶55} It is the judgment of this court that the judgment of the Ashtabula Municipal Court is affirmed in part and reversed in part. Appellant's conviction of Obstructing Official Business is affirmed. Appellant's conviction of Aggravated Disorderly Conduct is reversed. This matter is remanded for the trial court to enter a conviction for the minor misdemeanor offense of Disorderly Conduct and to resentence appellant accordingly on that count.

CYNTHIA WESTCOTT RICE, J.,

MARY JANE TRAPP, J.,

concur.